## Case No. 12,483b.

SCHUCHARDT v. The ANGELIQUE.

[22 Betts, D. C. MS. 2.]

District Court, S. D. New York. Oct. Term, 1853.

MARITIME LIENS — PRIORITIES — LIEN BY STATE STATUTE—MORTGAGE.

[1. In admiralty, as a general rule, there is no exclusive priority among maritime liens one over another, on account of either the subject-matter or the time of contracting the lien debt.]

[2. The exceptions to this rule are bottomry bonds and sailors' wages.]

[3. Where a state statute gives a lien for supplies furnished by material men in the home port, and makes that lien paramount to all others except sailors' wages, the federal admiralty courts will enforce the lien, although it be not otherwise than by the statute within their admiralty jurisdiction, but will refuse to recognize the exclusive priority of the lien over other maritime liens.]

[4. A mortgage regularly recorded has priority over all maritime liens subsequently created, except bottomry bonds and sailors' wages.]

[See, contra, Schuchardt v. The Angelique, Cases Nos. 12,483c and 12.483d.]

In admiralty.

The ship was first attached, by process sued out of this court by material men, on the 27th day of July last, and was sold by decree of the court on the 31st day of August, 1853. The proceeds have been deposited in court to await the disposal of the numerous actions pending against them of the ship. The suitors stand before the court representing various classes of demands, each of which it is urged, is entitled to a grade of priority over some of the other creditors. Over 70 actions have been instituted, and have been in part matured to decrees, and are in part in progress. In addition to those suits, several petitions have been filed, praying satisfaction, out of the proceeds of the ship, of other debts chargeable against her. Pleadings have been interposed, putting in contestation some of the demands in toto, and in other instances their amounts, and the privilege is reserved to parties to file further answers litigating the justness of other claims, should the court pronounce them entitled to a priority of any kind.

Application was made to the court by motion, upon this state of the proceedings, to declare the order in which the various classes of demands should be ranked for satisfaction out of the fund in court. The claims brought before the court on this motion were by passengers for a return of passage money advanced for the voyage, and for damages because of breaches of the contract; by material men for repairs put upon the ship, and supplies and necessaries furnished her; by freighters for damages, because of the nonperformance of the contract of affreightment; by the sheriff of the city and county of New York, for the amount of a demand on which the ship was arrested under process in his hands issued by a state court; and by mortgagees, claiming the entire moiety of the proceeds under a mortgage upon the ship, executed to them antecedent to the accruing of any of the other demands.

The claims to priority in these several cases were supported by E. C. Benedict, F. R. Sherman, J. B. Scoles, C. Donohue, and Mr. Hoxie.

Wells & Ogden, in opposition.

BETTS, District Judge. The ship Angelique was in a course of preparation, and was put up in July, for a voyage from this port to Australia, and advertised to receive on board freight and passengers for the voyage. The vessel was arrested at the suit of creditors, and the voyage was broken up after the ship had taken freight on board and had received, in advance, passage money from a large number of passengers. To save the accumulation of expenses, many suitors, pro-

ceeding against the ship, now apply to the court, by motion, to declare the legal effect of their demands, and the order of priority to be observed in their payment, it being found that the debts chargeable upon the ship and her proceeds greatly exceed in amount the fund in court.

It is conceded that the demands of seamen for their wages must be first satisfied, but, in respect to the residue of the fund, it is contended on the part of material men that their claims, being founded upon a statute of this state, are, by the provisions of that act, entitled to an absolute preference over every other description of demands than seamen's wages. The amount of this class of claims, with the attendant costs, will go towards absorbing the entire fund.

Undertakings to supply materials to a vessel, or perform labor in her repair, are maritime contracts, and suable in rem in admiralty when the services are rendered to a foreign vessel, or to one in the ports of a state to which she does not belong. But, as to repairs or necessaries in the state to which the ship belongs, the right of privilege is dependent upon the local law of the state, and no lien is implied unless recognized by that law. If the local law allows a lien for that description of debts, it may be enforced in admiralty, The General Smith, 4 Wheat. [17 U. S.] 438; Peyroux v. Howard, 7 Pet. [32 U. S.] 324; The Robert Fulton [Case No. 11,890]; The Marion [Id. 9,087]. The objection to the priority claimed by the material men in these cases is that the admiralty, having jurisdiction of the subject-matter, will enforce the remedy according to its own course of proceedings, and cannot be controlled by the law of the state. The gist of the remedy, unquestionably, is that of giving the libelants the benefit of their liens upon the ship; but, whether it is to be a maritime lien alone, or the statutory one which carries a higher privilege, is the question in issue between the parties.

A contract for repairs in a home port, being of a maritime character, is within the jurisdiction of the admiralty courts, as to the person. [The General Smith] 4 Wheat. [17 U. S.] 438. But no lien upon the thing can be implied from it, so as to give those courts jurisdiction in rem. The Orleans, 11 Pet. [36 U. S.] 181. When the local law attaches to the contract a right of lien, such lien may then be enforced according to the mode of administering relief in admiralty. Id. 184; Weaver v. The S. G. Owens [Case No. 17,310]. The same case settles the further principle that the local law has no effect to create or confer jurisdiction in the particular case against the vessel in kind. The admiralty court employs its own method of procedure to enforce a local lien, because its powers are independent of state legislation. They can neither be enlarged nor curtailed by it. The lien, therefore, carries with it no higher properties in a nautical tribunal than if it was one under the general law, nor does it necessarily acquire all the force it possesses in the local forums. The qualifications result from the rule that the privilege or lien is an incident of the maritime contract, in relation to jurisdiction and remedy, but is so solely to the extent that the local law creates and establishes the privilege. When, therefore, it ceases to be one under that law, it ceases to have the effect of one in the federal courts.

But whether the rights of material men are to be measured in admiralty by the provisions of the local law, is a question of a different character. Judge Conkling, in his Practice, says: "The state law furnishes the rule to ascertain the rights of the parties." 1 Conk. Adm. 57. But this inference is not authenticated by any adjudged cases, and there seems no principle of the common law or law maritime to uphold it. A state legislature would thus prescribe the law to the national judicatories, and might displace the best-established powers of those tribunals. This might give to domestic creditors incumbrances upon vessels which should override all other rights presented in the federal courts. The same power which permits them to raise the debts of material men to a priority over all other claims than those of seamen for wages, would likewise enable them to postpone the latter also, and disarm the admiralty courts of all efficient jurisdiction, on maritime contracts or torts, over domestic vessels.

The United States judiciary, having disclaimed the authority to take cognizance of liens on domestic vessels as incidents of maritime contracts, when the contract itself is within their jurisdiction, will look to the local law no further than to ascertain whether it ascribes a lien to the contract, and if there be one, will enforce it only to the same extent as if the contract carried the lien as an attribute under the maritime law. Accordingly, every condition or qualification to the accruing or attaching of the lien prescribed by the local law will be observed in admiralty, because those particulars are essential elements to its existence. If the vessel leaves the state, or goes out of the port of refitment, 12 days before the lien is pursued, the statute of this state does not act upon the matter, and admiralty must pronounce the vessel not subject to arrest for the debts through its jurisdiction.

In my opinion, in respect to the cases before the court, the material men have the same, and no other, privilege as if the vessel were a foreign one, and that, accordingly, they can claim no special prerogative or lien by favor of the local law. In my judgment there are but two descriptions of tacit liens which, under the maritime law, have title to a priority exclusive of others, and those are bottomry bonds and sailors' wages. This court has, in former causes, developed its views on this subject, and they are, I believe, in entire concurrence with the deci-

sions of the circuit court of this circuit, and the supreme court and court of chancery of this state; but, as opposing opinions on this subject have been pronounced in the district court of the Northern district of this state, and the parties here claim that as the sounder rule of law, I am quite willing to review the subject with the aid of a full argument, in any of these causes which shall be put to issue and be of sufficient magnitude to warrant the delay and expense attendant upon its more solemn consideration and determination.

The suits by passengers to recover back passage money advanced, and those by freighters on their shipping contracts, rest upon liens of the like character and effect with those of material men, and as classes stand before the court on the same footing of privilege.

In respect to the rank and character of the claim of the mortgagees, I hold, as a general principle, that the mortgage, being an incumbrance or positive hypothecation of the vessel, is paramount in privilege to the liens acquired subsequently and now before me. There may be modifications of that rule, no doubt, where the fund comes to be administered in an admiralty court, for there the rights of bottomry holders and seamen, accruing bona fide afterwards for the navigation and preservation of the vessel, will supersede a mortgage charge or other hypothecation. No definite opinion will, however, be pronounced establishing the validity of this mortgage or the rank of its lien, until the question of its validity has been tried upon issues to the libel filed by the mortgagees; and the antagonists to the demand have an opportunity to show that the mortgagees, as against this fund, are not protected by the general principle of priority, and that they, in legal effect, have no higher privilege than that of part owners.

Upon the motions made in these various and numerous cases, I therefore decide:

First. That the material men, as a class, have no legal priority of lien over other creditors, who, by the maritime law, are entitled to a lien or privilege against the ship, for their debts.

Second. That freighters who shipped merchandise in this ship have not, by virtue of their bills of lading or other ordinary shipping contracts, a priority of lien on the vessel.

Third. That persons who contracted for a passage on this ship for the voyage mentioned, and who paid the agreed passage prices in advance, have a maritime lien on the ship for the fulfillment of their contracts, but have no special priority of privilege over other maritime liens.

Fourth. That the mortgagees, if holding a bona fide mortgage, and acting in that character alone, are entitled to a priority lien over all the other creditors in court, except seamen, upon a moiety of the ship, unless it be shown that the priority has been waived or lost by their acts or their relationship to the ownership of the vessel.

Fifth. The doctrine of the court as to creditors of equal rank or privilege is that those who first enforce their liens acquire a priority in payment, but that rule will not be adhered to in this instance without allowing parties affected by it to bring up the point for the reconsideration of the court.

[NOTE. Judge Betts delivered a later opinion, in which he held that the libel of Schuchardt and Gebhard must be dismissed, upon the ground that their mortgage was not affected by the marshal's sale, and for this reason they could not be entitled to any part of the proceeds of the sale. Case No. 12,483a. From the decree entered dismissing the libel, an appeal was taken by the libelants to the circuit court, where the decree was affirmed, but upon a different ground, viz. that the mortgage lien had no priority over the subsequent maritime liens. The opinion of the district court upon the priorities among the several maritime liens was affirmed. Id. 12.483c. A fee of $250 was allowed counsel for the lienholders by the district court. Id. 12,705. The decree dismissing the libel was affirmed, upon appeal to the supreme court, upon a still different ground, viz. that the libel was in effect a suit to foreclose a mortgage, and as such not within the admiralty jurisdiction. The court expressed no opinion upon the conflicting points in the opinions of the district and circuit courts. 19 How. (60 U. S.) 239. The Ocean Mutual Association Company, who claimed to be subrogated to the rights of Schuchardt and Gebhard, filed a petition in the circuit court, after the decision of the supreme court, seeking a review of the district court decrees for the purpose of appearing as claimants in the original actions. The court held that the holders of the several maritime liens had priority over the mortgage by the maritime law, and that such a petition, seeking to establish the mortgage against their liens, could not be allowed. Id. 12,843d. This last decision pointedly overrules, upon this point, the opinion of Judge Betts in this case and in Case No. 12,483a.]